UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FREDDRICK T. POLLARD,

    Plaintiff,

v.                                                 Case No. 20-C-1868

KIM NIKOLAI, et al.,

    Defendants.

---

## SCREENING ORDER

---

Fredderick Pollard, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This matter comes before the Court on Pollard's motion for leave to proceed without prepaying the full filing fee, motion for a preliminary injunction and motion for a temporary restraining order, and to screen the complaint.

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Pollard requested leave to proceed without prepaying the full filing fee. A prisoner proceeding without prepayment of the filing fee is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Pollard has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $43.14. The Court will grant Pollard's motion for leave to proceed without prepaying the filing fee.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

2

# COMPLAINT ALLEGATIONS

Pollard is an inmate at the Redgranite Correctional Institution (RGCI). Dkt. No. 1, ¶3. Defendants work at RGCI: Kimberly Nikolai, Tom Larson, Terrence Jaeger, Jason McHugh, and Bultz are correctional staff; Angela Thompson and Kira Labby are medical staff. *Id*., ¶¶4-11.

In August 2020, Pollard wrote a "very explicit sexually charged letter" to the underaged daughter of an inmate on his unit. *Id*., ¶¶12-14. The young girl's mother contacted the institution, and Larson served Pollard with a no-contact order on August 20, 2020. *Id*., ¶15. At that time, Pollard told Larson that the girl's father had threatened to "fuck him up." *Id*., ¶38. The following day, on August 21, 2020, officers searched Pollard's cell and confiscated a piece of paper with the young girl's address on it. *Id*., ¶16.

In September 2020, inmates at the institution began "screaming threats and other vulgar obscene remarks" about Pollard being a sex-offender and a pedophile. *Id*., ¶¶17-20. They wrote derogatory statements about him on the bathroom stalls such as "you are a pedophile" and "bitch ass nigga, die!" *Id*., ¶¶19-20. Bultz showed Pollard the comments written about him on the bathroom stalls and said he "would handle it." *Id*., ¶20. During this time, Nikolai allegedly told inmates on the unit about Pollard's criminal history as a sex-offender and told them to take down any photos of young girls from the wall because Pollard is a "sicko." *Id*., ¶18.

Pollard reported the threats using an interview request form directed to Jaeger. *Id*., ¶17. Jaeger responded that Pollard had to identify by name the individuals who were threatening him. *Id*. Otherwise, nothing could be done. *Id*.

On September 13, 2020, several inmates sprayed Pollard in the eyes with cleaning chemicals while he was using the bathroom. *Id*., ¶21. Staff heard his screams and came to assist; they took him to the Health Services Unit (HSU). *Id*., ¶¶22-23. The officers filed an incident

3

report and "preserved evidence." *Id.*, ¶23. That same day, Pollard filed an inmate complaint about the incident. *Id.*, ¶24.

The following day, on September 14, 2020, Pollard submitted another interview request form telling Jaeger that Nikolai was telling inmates about his criminal history and him being a sex-offender. *Id.*, ¶26. Jaeger said he would look into it. *Id*. Pollard also submitted an inmate complaint about "staff misconduct." *Id.*, ¶27. Later that day, Pollard was instructed to pack his belongings to transfer to another institution due to threats of violence. *Id.*, ¶28. Pollard was never transferred though. *Id.*, ¶28. Instead, he was moved to another unit, which had inmates who had shouted threats and derogatory names. *Id*.

Pollard also went to HSU for an eye exam on September 14, 2020. *Id.*, ¶25. His eyes were painful and irritated from the cleaning chemicals. *Id*. It's unclear what happened during his exam. *See id*. About two weeks later, on September 28, 2020, Pollard submitted another HSU request about pain in his eyes and vision problems. *Id.*, ¶29. On October 12, 2020, Pollard submitted a third HSU request about his eye problems, including pain, difficulty seeing, and discharge. *Id*.

Pollard saw a Department of Corrections Optometrist on November 18, 2020. *Id.*, ¶30. Pollard's vision was "2-3 times worse" than the last time he had seen an Optometrist. *Id*. The Optometrist prescribed liquid drops. *Id*. On November 27, 2020 and November 29, 2020, Pollard submitted HSU requests about his eyes; he stated that he needed to see an outside Optometrist because he was having moments of blindness. *Id.*, ¶31.

On December 9, 2020, Pollard's mother received a ransom note from somewhere in Racine, which stated that if she didn't pay $25,000, she and Pollard would be killed. *Id.*, ¶32. The letter stated that Pollard was a "nasty pedophile." *Id*. Pollard's mother contacted the police. *Id*. For relief, Pollard seeks monetary damages and an injunction.

4

## THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of others. *Id*. Pollard does not allege any facts as to McHugh, Thompson, or Labby. It's unclear what they did (or did not do) to violate his constitutional rights. In the absence of specific factual allegations that these individuals took any action against him, Pollard's assertion that they violated his constitutional rights is merely conclusory. The Court will dismiss McHugh, Thompson, and Labby from this case.[1]

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Balsewicz v. Pawlyk*, 963 F.3d 650, 654 (7th Cir. 2020). To state a claim, Pollard must allege that: (1) he was exposed to a harm that was objectively serious; and (2) the prison official knew of and disregarded an excessive risk to the inmate's health or safety. *Id*.

---

[1] The Court notes that Pollard's medical care claim against Thompson and Labby also belongs in a different lawsuit because the facts needed to show that correctional officer staff failed to protect him are completely different from the facts needed to show that medical staff failed to provide medical care. *See* Fed. R. Civ. P. 18 and 20. That the incidents happened on the same day, and at the same institution, does not mean that the defendants and claims belong in the same lawsuit. Pollard can join defendants and claims in a single lawsuit only if he asserts at least one claim against each defendant that arises out of the same events or incidents; <u>and</u> involves questions of law or fact that are common to <u>all</u> the defendants. *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). Here, there are no questions of law or fact common to all the named defendants.

5

Case 1:20-cv-01868-WCG   Filed 03/10/21   Page 5 of 9   Document 10

A generalized risk of violence is not enough, for prisons are inherently dangerous places. *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011). Instead, an inmate must allege a tangible threat to his safety or well-being. *Id*. A substantial risk of serious harm is one in which the risk is "so great" that it is "almost certain to materialize if nothing is done." *Id*. (internal citations omitted). "[T]he conditions presenting the risk must be sure or very likely to cause . . . needless suffering, and give rise to sufficiently imminent dangers." *Id*.

Based on the allegations in the complaint, the Court will allow Pollard to proceed with a failure to protect claim against Larson, Bultz, Nikolai, and Jaeger. Pollard states that all of these individuals knew about his circumstances and failed to act to protect him. Larson delivered the no-contact order on August 20, at which time Pollard told him that the girl's father had threatened him. Bultz showed Pollard the graffiti on the bathroom stalls which said, "Bitch ass nigga, die!" Nikolai told other inmates about his criminal history as a sex-offender and told them to take down pictures of young girls from the walls. And Jaeger received two interview request forms from Pollard seeking protection. No one did anything to protect him. Pollard states that he has already been attacked with cleaning chemicals once and that he is still at risk of harm now. It appears that someone at the institution was aware of the risk of harm because that person contemplated moving Pollard to another institution but decided against it. At this early stage of the litigation, Pollard's allegations are sufficient to state a failure to protect claim against Larson, Bultz, Nikolai, and Jaeger.

## MOTION FOR A PRELIMINARY INJUNCTION AND
## MOTION FOR A TEMPORARY RESTRAINING ORDER

Pollard filed a motion for a preliminary injunction and motion for a temporary restraining order. Dkt. No. 7. Pollard asks the Court to order immediate transfer to another institution. *Id*. at

1. He also notes that Nikolai has "utter contempt and sheer disrespect" towards sex-offenders; and Larson may retaliate against him for naming him as a defendant in this case. *Id*. at 2-3.

In the context of prisoner litigation, injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); *see also Westefer v. Neal,* 682 F.3d 679, 683 (7th Cir. 2012). Transfer to a different institution is an extreme remedy that likely is not the "least intrusive means" of correcting the alleged harm. Nevertheless, the Court will order the defendants to respond to the motion for a preliminary injunction and motion for a temporary restraining order within 21 days of this order.

## Conclusion

The Court finds that Pollard may proceed with an Eighth Amendment failure to protect claim against Terrence Jaeger, Kimberly Nikolai, Tom Larson, and Bultz.

**IT IS ORDERED** that Jason McHugh, Angela Thompson, and Kira Labby are **DISMISSED** from this case.

**IT IS ORDERED** that Pollard's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED**.

**IT IS ORDERED** that the defendants shall file a response to the motion for a preliminary injunction and motion for a temporary restraining order within 21 days of this order.

**IT IS ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of the complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Terrence Jaeger, Kimberly Nikolai, Tom Larson, and Bultz. These individuals shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS ORDERED** that the agency having custody of Pollard shall collect from his institution trust account the **$306.86** balance of the filing fee by collecting monthly payments from Pollard's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Pollard is transferred to another institution, the transferring institution shall forward a copy of this Order along with Pollard's remaining balance to the receiving institution.

**IT IS ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

Pollard is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin this 10th day of March, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge