UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FREDDRICK T. POLLARD,

        Plaintiff,

       v.                                 Case No. 20-C-1868

TOM LARSON, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Freddrick T. Pollard, who is representing himself, is proceeding with a claim that Defendants Tom Larson, Terrence Jaeger, and Adam Baltz violated the Eighth Amendment by failing to protect him from another inmate at the Redgranite Correctional Institution. Dkt. No. 10 at 7. On November 3, 2021, Defendants filed a motion for summary judgment. Dkt. No. 30. Plaintiff then filed a motion to appoint counsel. Dkt. No. 40. For the reasons explained below, the Court will deny the motion to appoint counsel, grant the motion for summary judgment, and dismiss this case.

## MOTION TO APPOINT COUNSEL

On December 20, 2021, Plaintiff filed a motion to appoint counsel. Dkt. No. 40. He explained that he has no legal knowledge and has a learning disability. *Id.* Additionally, Plaintiff stated that "jailhouse lawyers" have been assisting him with his submissions since the start of the case. *Id.* He asserted that he contacted five attorneys in an effort to obtain counsel on his own but only one responded and none have agreed to represent him. *Id.*

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1).

"[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. *Pickett v. Chicago Transit Authority,* 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." *Id.* When considering the second prong, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491.

Plaintiff satisfied the first prong of the standard. *See* Dkt. No. 40-1. But the Court will deny the motion to appoint counsel because Plaintiff does not satisfy the second prong of the standard. Plaintiff's communications with the Court throughout the litigation have been clear, organized, and easy to understand. *See* Dkt. Nos. 23-26. More significantly, though, his summary

judgment response materials, *see* Dkt. Nos. 41-43, Plaintiff demonstrated that he understood the Court's notice and order, *see* Dkt. No. 37, which gave him specific instructions on how to respond to summary judgment. For example, Plaintiff filed a response to Defendants' proposed findings of fact that cited to evidence supporting the facts he disputed. Dkt. No. 41. Plaintiff filed a response brief that cited relevant case law and addressed Defendants' arguments. Dkt. No. 42. And Plaintiff filed his own proposed facts that explained his side of the story. Dkt. No. 43. The Court notes that Plaintiff's claim is straightforward and largely turns on his memory of what he told Defendants prior to being sprayed by chemicals by another inmate. Plaintiff's response materials clearly explain what he told Defendants, both before and after the incident, and the Court is familiar with the relevant case law. The assistance of a lawyer would not have been useful in briefing the motion for summary judgment because a lawyer cannot change the operative facts. Accordingly, the Court will deny the motion to appoint counsel.

## FACTS

Plaintiff is an inmate at the Redgranite Correctional Institution (RGCI), a medium-security facility operated by the Wisconsin Department of Corrections. Dkt. No. 32, ¶1. Defendants are RGCI Captain Tom Larson, RGCI Unit Manager Terrance Jaeger, and RGCI Sergeant Adam Baltz. *Id*.

In August 2020, Plaintiff sent a sexually explicit letter to the underage daughter of an inmate on his unit. *Id*., ¶2; *see also* Dkt. No. 43, ¶2. The girl's mother called Larson to report the incident, and Larson served Plaintiff with a memorandum on August 20, 2020, instructing him not to have any further communication with the girl or her family. Dkt. No. 32, ¶3; *see also* Dkt. No. 43, ¶1. According to Plaintiff, he told Larson that he wanted to be moved to a different unit because he feared being on the same unit with the girl's father, who had threatened to "fuck him up." Dkt. No. 43, ¶2. But Larson did not separate Plaintiff from the girl's father. *Id*., ¶3. According to

3

Larson, Plaintiff never identified anyone specific that had threatened him and he never stated that he feared for his safety. Dkt. No. 32, ¶¶4-5, 7. Even if Plaintiff had, Larson explains, he was not the individual responsible for moving inmates to a different unit—that task belonged to Jaeger. *Id*., ¶6. Larson states that, had Plaintiff asked to be moved, Larson would have directed Plaintiff to Jaeger. *Id*.

A few weeks later, on September 2, 2020, Plaintiff submitted an interview/information request to Jaeger stating that inmates on a different unit were calling him a pedophile and asking what he should do about it. *Id*., ¶8. Plaintiff explains that he was "alarmed enough to report it to [Jaeger] twice." Dkt. No. 43, ¶5. Jaeger responded that, if Plaintiff could identify any of the inmates, he would talk to those inmates. Dkt. No. 32, ¶9. Plaintiff did not identify any of the inmates by name or description, so Jaeger did not take further action. *Id*., ¶10; *see also* Dkt. No. 43, ¶6. Jaeger explains that it is not administratively feasible to move inmates every time there is possible conflict unless there is a confirmed, particularized threat. Dkt. No. 32, ¶13. Jaeger further explains there was no basis to think that Plaintiff was in any danger based on the interview/information request because Plaintiff stated that the inmates allegedly "yelling" at him were on a different unit. *Id*., ¶¶11-12.

About two weeks later, on September 13, 2020, Baltz was notified that graffiti in a bathroom called Plaintiff a pedophile. *Id*., ¶14; *see also* Dkt. No. 43, ¶7. Baltz reported the graffiti to the unit captain, covered the graffiti, then submitted a work order to remove the graffiti. Dkt. No. 32, ¶15. According to Baltz, Plaintiff did not tell him that anyone specific had threatened him or that he felt unsafe. *Id*., ¶16. Baltz explains that graffiti of that type is usually meant to demean, belittle, or harass an individual anonymously; not threaten them directly. *Id*., ¶17. Baltz also did not move Plaintiff to a different unit. Dkt. No. 43, ¶8. Later that day, on September 13, 2020, an unidentified inmate sprayed Plaintiff in the face with chemicals. *Id*.; *see also* Dkt. No. 32, ¶19.

Plaintiff explains that the inmate was not the girl's father and "it wasn't nobody [he] deal with." *See* Pollard Depo., Dkt. No. 46 at 29:10 to 30:7. The next day, on September 14, 2020, Plaintiff was moved to another unit and has never returned to the unit where he was attacked. Dkt. No. 32, ¶20.

Prison staff later interviewed Plaintiff regarding a motion for a preliminary injunction that he filed in this case in March 2021. *Id.*, ¶21. Plaintiff explained that people had made comments behind his back, so he "watches his back," but he did not identify anyone specific who had threatened him. *Id.*, ¶22. At the interview, prison staff gave him a document called "DOC-1803 Inmate Request for Separation" in case he wanted to make a request for separation from any inmates that were threatening him. *Id.*, ¶23. Plaintiff has never submitted a DOC-1803 for separation from another inmate before or after the September 13, 2020 incident. *Id.*, ¶24.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

To survive summary judgment on a failure-to-protect claim, Plaintiff must produce evidence from which a reasonable jury could conclude that (1) he faced a substantial risk of serious harm and (2) Defendants responded with deliberate indifference. *Balsewicz v. Pawlyk*, 963 F.3d 650, 654-55 (7th Cir. 2020); *see also Harris v. Molinero*, 803 F. App'x 1, 4 (7th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). The requisite knowledge "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (citing *Farmer*, 511 U.S. at 842). But complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger. *Id.* at 480-81.

Based on the undisputed evidence, Defendants are entitled to summary judgment because they did not have actual knowledge that Plaintiff was in danger prior to the September 13, 2020 attack. With respect to Jaeger and Baltz, Plaintiff admits that he never told these individuals about anyone specific that threated him. *See* Dkt. No. 41, ¶¶10, 16. Plaintiff admits that he "did not identify any of the inmates by name or even by description." *Id.*, ¶10. And Plaintiff maintains

6

that "the graffiti was threatening in itself" even though it was anonymous. *Id.*, ¶16. Plaintiff, in other words, only raised vague and generalized concerns about his safety, which were not enough to put Jaeger and Baltz on notice of a particularized risk of harm.

With respect to Larson, Plaintiff alleges that he identified Larry Gardner as the individual who threatened him, but Gardner of course was not the individual who attacked Plaintiff. In fact, Plaintiff still does not know who attacked him or if the attack was even related to the incident with Gardner's daughter in August 2020. *See* Pollard Depo., Dkt. No. 46 at 38:17 to 30:14. Plaintiff suspects that the inmate who attacked him may have been associated with Gardner because "cats be wanting to be down" and that "could have been their opportunity." *See id.* at 30:1-14. Plaintiff also states that the attacker allegedly said, "you pedophile ass bitch." *Id.* at 28:1. But speculation is not enough to survive summary judgment. *Jones v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). Plaintiff has not put forth any evidence directly connecting Gardner or his associates to the attack. Defendants have therefore met their burden to show that they did not have actual knowledge that Plaintiff was in danger prior to the September 13, 2020 attack.

Plaintiff argues that he did not need to identify specific individuals who threatened him prior to the attack because the risk of harm was "obvious." *See* Dkt. No. 42. He appears to imply that being labeled a "pedophile" in prison was notice enough that he would eventually be attacked. But Plaintiff's own deposition undercuts his position. Plaintiff states for example, "I ain't even think the attack would have happened." *See* Pollard Depo., Dkt. No. 46 at 16:16-17 and 17:5-6. He states that he perceived the name-calling as "little institution gossip" and "little rumors." *Id.* at 16:6-11 and 23:6. And he states, "I laughed it off" and "it was funny to me," when he discussed the name-calling with Defendants. *Id.* at 17:12 and 25:9-10. Because even Plaintiff did not genuinely believe that he would be attacked, no reasonable jury could conclude that Defendants

7

Case 1:20-cv-01868-WCG   Filed 05/10/22   Page 7 of 8   Document 47

had facts from which they could infer that Plaintiff faced a substantial risk of serious harm and that they actually drew that inference.

The Court notes that when Pollard was attacked in September 2020, he was immediately moved to a different unit the following day. Since then, the girl's father has also been released from prison. *Id.* at 36:9-10. Pollard therefore is not currently at risk of harm. Based on the undisputed evidence, Defendants are entitled to summary judgment.

## CONCLUSION

For these reasons, Plaintiff's motion to appoint counsel (Dkt. No. 40) is **DENIED** and Defendants' motion for summary judgment (Dkt. No. 30) is **GRANTED**. This case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 10th day of May, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.